UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES C. KELLEY,<br><br>Plaintiff,<br><br>v.<br><br>DR. KAREN GEDNEY, et. al.,<br><br>Defendants. | Case No. 3:16-cv-00041-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is the Motion to Dismiss/Motion for Summary Judgment filed by Defendants Dr. Karen Gedney and Shannon Moyle. (ECF Nos. 23, 24; Exhibits at 23-1 to 23-23-8, 24-1 to 24-8, and 25-1 to 25-5 (filed under seal).)[1] Plaintiff filed a response (ECF No. 37), and Defendants filed a reply (ECF No. 41).

After a thorough review, the court recommends that Defendants' motion be granted on the basis that Plaintiff failed to exhaust available administrative remedies.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id*.) Defendants are Dr. Karen Gedney, Nursing Director Jonathan Perry[2], and NNCC Grievance Coordinator Shannon Moyle. (*Id*.)

---

[1] These documents are identical.

[2] The Screening Order identified the nursing director defendant as Perry, but the complaint listed the defendant

On screening, Plaintiff was allowed to proceed with claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment based on allegations that Dr. Gedney failed to treat his hepatitis-C and refused to refer him for surgery for his hernia, and that Perry and Moyle denied his grievances on these issues. (*See* Screening Order, ECF No. 3.)

Defendants move for summary judgment arguing: (1) Plaintiff failed to properly exhaust his administrative remedies; (2) Shannon Moyle did not personally participate in the alleged Eighth Amendment violation; and (3) there is no evidence Dr. Gedney was deliberately indifferent to Plaintiff's hernia or hepatitis C.

## II. LEGAL STANDARD

While Defendants' titled their motion as one for dismissal or summary judgment, all of their arguments rely on evidence outside of the complaint; therefore, the court will treat it as a motion for summary judgment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the court will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice"); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

as Dir. of Nursing John Peery in the caption and list of defendants (*see* ECF No. 4 at 1, 2), and then as "Jonathan Perry" and "Perry" in the body of the complaint (*id.* at 6, 13). When John B. Peery was eventually served, a motion for summary judgment was filed on his behalf, arguing that he is not the correct defendant. The court has concurrently recommended that summary judgment be granted in John B. Peery's favor. The Attorney General's Office has accepted service on behalf of Jonathan Perry as of January 19, 2017, but he has not joined in this motion for summary judgment or otherwise filed a responsive pleading. Default has not yet been entered against Perry. Given the court's recommendation that summary judgment be granted because of Plaintiff's failure to exhaust, Defendant Perry should file a joinder in Defendants' motion or other responsive pleading forthwith.

Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. See Anderson, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied.*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)).

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citation omitted). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in this particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citations omitted). The ultimate burden of proof, however, remains with the defendant. *Id.*

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance; rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issue on the merits)." *Id.* (citation omitted). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process. *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. That being said, an inmate exhausts available remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

If the court concludes that administrative remedies have not been properly exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120. If the court finds that the prisoner has exhausted available administrative remedies or that the administrative remedies were not available to him, the case may proceed on the merits. *Albino*, 747 F.3d at 1171.

/ / /

**B. NDOC Grievance Process**

NDOC's Administrative Regulation (AR) 740 governs the inmate grievance process. (ECF No. 23-8.)[3] It requires an inmate try to resolve grievable issues through discussion with their caseworker, and then if resolution is not possible, to complete three levels of review: the informal, first and second levels. (ECF No. 23-8 at 6-10.) "In the event an inmate's claim is deemed inappropriate for review or not within the intended scope of this Regulation, the inmate may appeal that decision only to the next procedural level of review." (ECF No. 23-8 at 4, AR 740.03.5.) "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level, within the substantive and procedural requirements outlined [in AR 740]." (ECF No. 37 at 31, AR 740.03.6.)

An inmate has six months to file a grievance concerning medical or civil rights claims. (ECF No. 23-8 at 6, AR 740.05.4.A.) If an inmate fails to submit an informal level grievance within the designated time frame, it is considered abandoned at the informal and all subsequent levels. (ECF No. 23-8 at 7. AR 740.05.8)

AR 740 also provides that a "First Level Grievance that does not comply with procedural guidelines shall be returned to the inmate, unprocessed, with instructions using Form DOC-3098, if applicable, for proper filing via the caseworker." (ECF No. 23-8 at 9, AR 740.06.e.)

AR 740.09 addresses abuse of the inmate grievance procedure, and prohibits an inmate from "abusing the system by knowingly, willfully or maliciously filing frivolous or vexatious grievances[.]" (ECF No. 23-8 at 11, ECF No. 740.09.1.) Abuses of the inmate grievance procedure include, but are not limited to, grievances that contain: threats of serious bodily injury to a specific person; specific claims or incidents previously filed by the same inmate; more than four unfounded, frivolous or vexatious grievances per month; filing two or more emergency grievances per month that are not deemed to be emergencies; obscene, profane and derogatory language, or contain two or more appropriate issues. (ECF No. 23-8 at 11, AR 740.09.2.A-F.)

---

[3] The parties have each provided a copy of the relevant version of AR 740. (Defs.' at ECF Nos. 23-8 and 24-8, and Pl.'s at ECF No. 37 at 29-42.) For brevity and ease of reading, all references to AR 740 in this Report and Recommendation will be to ECF No. 23-8.)

When an inmate files such a grievance, the assigned caseworker is instructed to return a copy of the improper grievance to the inmate and Form DOC 3098, Improper Grievance Memorandum, that notes the specific violation. (ECF No. 23-8 at 11, AR 740.09.3.A.) An inmate is not to be given additional time to re-submit the grievance in the proper form, and the failure to re-submit the grievance in proper form, within the prescribed time frame, constitutes abandonment. (ECF No. 23-8 at 11, AR 740.09.4, A.) "If the timeframe has been exhausted prior to the inmate receiving Form DOC-3098, the inmate has five (5) days from the date it was received to re-submit." (AR 740.09.4.B.)

**C. Grievance Documentation**

There is no dispute concerning the grievance documentation submitted by Plaintiff.

First, Plaintiff submitted his informal level grievance, identified as grievance number 2006302478, on June 9, 2015. (ECF No. 23-1 at 2[4]; ECF No. 37 at 44-45.) He stated:

> Around the last week of May 2015 I was seen at NNCC's RMF by RN Manalang regarding my medical kite requesting surgical treatment for my hernia and the new hepatitis C pill treatment available to inmates at NNCC. RN Manalang ordered a blood test be done for my Hep C, and referred that I see Dr. King (NDOC's surgical contractor medical specialist) for surgical treatment for my stomach hernia. Meanwhile, my blood test came back indicating that I have Hep-C. On June 4, 2015 I was seen by Dr. Gedney who said I was to die of cigarette related symptoms before I would Hep-C, and basically refused to refer surgery to NNCC's Utilization Review Panel or provide the Hep-C treatment pill that would not only prolong my life span but prevent any [ ] Hep-C transfer to other inmates. On June 8, 2015, I was scheduled to see Dr. King and when I went to the RMF to see him, I was stopped and informed by RN Mellissa-in front of Dr. King, Dr. Gedney cancelled my appointment with Dr. King. I am being denied adequate medical care for my serious medical need of hernia surgery and Hep-C treatment that is available to inmates at NNCC, thus my Eighth Amendment right to adequate medical care is being violated by Dr. Gedney.

(ECF No. 37 at 44-45.)

---

[4] Defendants only provided the NOTIS grievance history report which summarizes inmate grievances and responses instead of the actual grievance documentation. The court has previously instructed the Attorney General's Office that when it raises the affirmative defense of failure to exhaust administrative remedies it may submit the NOTIS report, but should also submit the actual grievance documentation, as the summary frequently varies from or does not contain all of the information from the actual grievance. Here, the problem is obviated in light of Plaintiff's filing of the actual grievance documentation with his complaint and response to Defendants' motion. Defense counsel is reminded that any future motion raising the failure to exhaust affirmative defense should be supported by the actual grievance documentation.

In response to the informal level grievance, Plaintiff was advised:

> Mr. Kelley, per Medical Directive #219 you do not meet the criteria for Hepatitis C treatment at this time. Per the physician['s] notes, your Hepatitis C should be monitored every year, and that no treatment is needed at this time. Per physician['s] notes, you have a small umbilical hernia, and surgery at this time would be elective. Elective surgeries are not performed by the NDOC.

(ECF No. 23-1 at 2; ECF No. 37 at 47.)

Plaintiff filed a first level grievance dated June 30, 2015, disagreeing with the response to the informal level grievance. (ECF No. 23-1 at 2; ECF No. 37 at 49-51.) It states:

> I disagree with your response, as First, Medical Directive # 291 does not exist. Second, how do you determine whether or not I meet the criteria for Hep-C treatment (which 10 inmates are already receiving) without providing me with a proper medical evaluation such as a liver biopsy in order to determine the diagnosis or treatment options. A blood test only informs medical that a person has hep-C. Third, NNCC does not have a medical protocol or directive on proper "monitoring" of hep-C infected inmates for treatment-waiting a whole year before monitoring a person['s] condition again puts that person at a greater risk of health and safety. As so, I am requesting a liver biopsy in order to properly evaluate and treat my hep-C condition. Lastly, I have informed both P.A. Manalang and Dr. Gedney that my umbilical hernia is severely painful and hurts every time I bend over. To deny me proper evaluation for treatment by cancelling my appointment with Dr. King (on June 8, 2015) for hernia surgical treatment is deliberate indifference to my serious medical needs. Once again I am requesting to be seen by Dr. King so he can make a proper evaluation for surgical treatment.

(ECF No. 37 at 49-51.)

Perry sent Plaintiff an NDOC improper grievance memorandum dated July 7, 2015. (ECF No. 37 at 52.) Plaintiff was advised:

> Per AR 740.09 2 F, 'It is considered abuse of the inmate grievance procedure when an inmate files a grievance that … contains two or more appropriate issues.' Your grievance involves both Hep C treatment and hernia surgery. Please split this into two separate grievances. You may resubmit your grievance after correcting the above deficiencies. Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

(ECF No. 37 at 52.)

Plaintiff did not file two separate grievances. Instead, Plaintiff filed a second level grievance disagreeing with the response to the first level grievance. (ECF No. 23-1 at 2; ECF No. 37 at 54-62.) He took issue with Perry deeming his first level grievance an abuse of the grievance procedure for containing multiple issues when he had received a response on the

merits to the hepatitis-C and hernia repair issues at the informal level. He repeated the allegations of deliberate indifference asserted in his informal level grievance, and claimed that they stemmed from a single occurrence—Dr. Gedney's deliberate indifference to his serious medical needs. He went on to assert that the response to the first level grievance was preventing him from exhausting administrative remedies for various reasons.

The second level grievance was apparently received and forwarded to Keast, and was ultimately rejected by Perry again as being an abuse of the inmate grievance procedure because it contained two or more appropriate issues as it involved both hepatitis-C treatment and hernia surgery. (ECF No. 23-1 at 3.) Plaintiff was told: "split this into two separate grievances." (*Id*.)

**D. Summary of Argument**

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies because the prison rejected the grievance procedurally at the first and second levels on the basis that Plaintiff was attempting to grieve multiple issues in one grievance. They contend that he did not receive a ruling on the merits at each level of the grievance process, and he failed to resubmit his grievances separately as directed.

Plaintiff argues: (1) once prison officials answered and addressed his complaints on the merits at the informal level, he exhausted his administrative remedies for purposes of the informal level, and needed to only proceed to the next levels; (2) his grievance was improperly rejected as containing multiple issues; (3) the grievance process was unavailable to him as a result of the finding that the grievance contained multiple issues because the regulation precluded him from raising those issues again; and (4) the grievance process was unavailable to him because AR 740 is ambiguous as to how to appeal or proceed on a grievance deemed abusive for containing multiple issues.

**E. Analysis**

The court must now determine whether Plaintiff *properly* exhausted his administrative remedies, and whether the administrative grievance process was *available* to him.

In *Ross v. Blake*, the Supreme Court rejected the Fourth Circuit's adoption of a "special circumstances" excuse for non-exhaustion that had been applied to a prisoner found to have

made a reasonable mistake about the meaning of the prison's grievance procedures. *Ross*, 136 S.Ct. at 1858. The Supreme Court nevertheless pointed to a non-exhaustive list of examples where courts may conclude that administrative remedies are unavailable, and remanded for consideration of whether the circumstances there presented a case where administrative remedies were in fact available to the inmate. *Id*. at 1858-1862.

First, the Supreme Court stated that administrative remedies are unavailable "when (despite what regulations or guidance materials may promise) [the grievance process] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief." *Id*. at 1859. The Court gave the following example: "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Id*. "'[W]here the relevant administrative procedure lacks authority to provide any relief,' the inmate has 'nothing to exhaust.'" *Id*. (citing *Booth*, 532 U.S. at 736, n. 4.) The same is true where "administrative officials have apparent authority, but decline ever to exercise it." *Id*.

The second situation where the Supreme Court said administrative remedies are unavailable is when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. If the process is "susceptible of multiple reasonable interpretations … the inmate should err on the side of exhaustion[,] [b]ut when a remedy is … essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* (citing *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007); *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)).

The final instance discussed by the Supreme Court when administrative remedies are unavailable is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. This occurs when prison officials devise a procedural system to "trip[ ] up all but the most skillful prisoners" or by misleading or threatening inmates "so as to prevent their use of otherwise proper procedures." *Id*. (citations and internal quotation marks omitted).

The court will now turn to the parties' arguments concerning whether Plaintiff exhausted available administrative remedies.

**1. Response on the Merits at the Informal Level**

It is undisputed that Plaintiff received a response on the merits at the informal level, but his grievance was then rejected on procedural grounds (for containing multiple issues) at the first and second levels.

Defendants argue that he did not properly exhaust his administrative remedies because he did not receive a response on the merits at the first and second levels, and he failed to file two separate grievances on these issues as he was instructed. (ECF No. 41 at 4.)

Plaintiff contends that the response on the merits at the informal level served to exhaust his administrative remedies there, and all he was required to do was then proceed to the first and second levels. (ECF No. 37 at 13, 19.)

Plaintiff relies on *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) to support his position. That case stands for the proposition that "[a]n inmate has no obligation to appeal from a *grant of relief*, or a *partial grant of relief that satisfies him*, in order to exhaust his administrative remedies." *Harvey*, 605 F.3d at 685 (emphasis added). Here, Plaintiff was not granted any relief at the informal level, let alone relief that satisfied him. Instead, he was advised he did not meet the criteria for hepatitis-C treatment and would be monitored, and that hernia surgery was elective and would not be performed by NDOC. Therefore, *Harvey* is inapposite.

Instead, *Reyes v. Smith* is controlling here. *Reyes,* 810 F.3d 654 (9th Cir. 2016). In *Reyes* the inmate received a substantive response to his grievance at all available levels, and was told at the final level: "This decision exhausts your available administrative remedies." *Reyes*, 810 F.3d at 656. The inmate eventually brought an action under section 1983, and the defendant moved to dismiss the case, arguing the inmate failed to exhaust by not following the prison's rule requiring the inmate to list all staff members involved in the grievance and to describe their involvement. *Id*. at 657-58. The Ninth Circuit reiterated that prisoners are required to adhere to procedural rules of the grievance process, *id*. at 657, but held (in conformity with the other seven circuits to address the issue): "a prisoner exhausts 'such administrative remedies as are available,'…, under

the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance *at each available step* of the administrative process." *Id*. at 658 (internal citation omitted) (emphasis added).

Under *Reyes*, prison officials here could have waived the requirement that the grievance address only a single issue by responding to both the hepatitis-C and hernia repair issues on the merits *at all levels of review*. That did not occur. Plaintiff was given a response on the merits at the informal level, but at the first and second levels he was advised that his grievance was procedurally infirm because it contained two appropriate issues: hepatitis-C treatment and hernia repair. While it may have been a better practice for the prison to reject the grievance on this basis at the informal level, it remains that the Ninth Circuit requires a decision on the merits at *all available levels of review* in order to consider the administrative remedies exhausted. The undersigned came to a similar conclusion in another case where the inmate did not receive a decision on the merits at all available levels of review. *See, e.g., Shannon v. Harroun*, 3:14-cv-00505-RCJ-WGC, 2016 WL 4425096, at * 8 (D. Nev. June 27, 2016), adopted at 2016 WL 442953 (D. Nev. Aug. 17, 2016) (finding the prisoner did not exhaust available administrative remedies where after the grievance was purportedly resolved on the merits at the informal level, but the inmate did not proceed to the first and second level grievances as mandated by AR 740).

Therefore, the fact that Plaintiff's grievance was addressed on the merits at the informal level does not mean that he properly exhausted his administrative remedies.

**2. "Two or More Appropriate Issues"**

In essence, Plaintiff contends that prison officials improperly screened his grievance out at the first and second levels for containing "two or more appropriate issues." Plaintiff argues that AR 740 is ambiguous as to the meaning of "two or more appropriate issues." He claims that he did properly exhaust his administrative remedies because it is his position that his grievances did not refer to multiple issues, but one single issue—Dr. Gedney's deliberate indifference to his serious medical needs. Defendants, on the other hand, maintain that the grievance addressed two issues—his hepatitis C treatment and hernia surgery—making the rejection at the first and second levels proper.

It is undisputed that AR 740 prohibits an inmate from abusing the grievance system, and it is considered abuse of the inmate grievance procedure to file a grievance that "[c]ontains two or more appropriate issues." (ECF No. 23-8 at 11, AR 740.09.2.F.)

The Ninth Circuit has held that administrative remedies are not available when prison officials improperly screen a prisoner's grievance so that he cannot proceed to the next levels of review. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). For the court to conclude that administrative remedies are unavailable, the inmate is required to establish: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id*. at 823-24.

The Supreme Court has likewise recognized that administrative remedies might be unavailable when the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S.Ct. at 1859. "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The Court stated, however, that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id*. This is in contrast to when a remedy is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—[,]" in which case the process is unavailable. *Id*. (citation omitted).

Plaintiff does not contend, and the court does not conclude, that no ordinary prisoner could decipher the "two or more appropriate issues" language. Instead, as Plaintiff points out, that phrase is subject to multiple reasonable interpretations insofar as Plaintiff's grievance is concerned: Plaintiff's grievance could be construed as asserting a single issue (the denial of health care by Dr. Gedney) or, two issues (hepatitis-C treatment and hernia surgery).

Under *Sapp*, the prison's decision to construe the grievance which discussed both hepatitis-C treatment and hernia surgery as containing multiple issues is not inconsistent with or unsupported the regulation. Instead, construing a grievance that addressed two topics as an abuse

of the prison grievance procedure is consistent with the regulation which precludes a grievance from containing "two or more appropriate issues."

Under *Ross*, if the phrase was subject to multiple reasonable interpretations, Plaintiff should have erred on the side of exhaustion which according to defendants, required him to timely re-submit separate grievances. This requirement will be discussed further below.

In sum, the court cannot conclude the grievance process was unavailable to Plaintiff because his grievance was determined to contain "two or more appropriate issues."

**3. Did Instructing Plaintiff to File Two Separate Grievances Make the Grievance Process Unavailable?**

Plaintiff argues that had he proceeded with filing two separate grievances concerning his hernia surgery and hepatitis-C treatment, he would not have been allowed to proceed because AR 740.09 also precludes an inmate from filing more than one grievance at any one time about a given incident or occurrence.

"[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end[.]" *Ross*, 136 S.Ct. at 1859 (citing *Booth*, 532 U.S. at 736, 738). "When the facts on the ground demonstration that no such potential [to obtain relief] exists, the inmate has no obligation to exhaust the remedy." *Id.*

Plaintiff points to another provision of the NDOC's regulation, AR 740.09.2.B, which says that it is an abuse of the inmate grievance procedure when an inmate files a grievance that "contains specific claims or incidents previously filed by the same inmate." (ECF No. 23-8 at 11.) As such, he claims that even if he had proceeded with filing the grievances separately, they would have been rejected as an abuse of the prison grievance procedure too, leaving him at a "dead end."

In theory, if Plaintiff had re-filed his grievances separately, with one discussing his hernia surgery and the other discussing his hepatitis-C treatment, the grievances *could possibly* have been rejected as an abuse of the inmate grievance procedure under AR 740.09.2.B either because both of the newly filed grievances discussed the same event (a single medical appointment with Dr. Gedney) or because he had raised the claims/incidents in the previously

rejected grievance. This did not occur here because Plaintiff never filed the grievances separately. Nor does Plaintiff provide any evidence that this scenario had in fact occurred, either to him or other inmates (*i.e.*, another inmate(s) filed a grievance that was rejected because it contained two or more appropriate issues and when the inmate followed the direction to re-file the grievances separately, his grievance was rejected under AR 740.09.2.B). Therefore, it cannot be said that the "facts on the ground" demonstrate Plaintiff had no potential for obtaining relief. *See Ross*, 136 S.Ct. at 1860-61 (noting that the inmate's filings included "many administrative dispositions (gleaned from the records of other prisoner suits) indicating that Maryland wardens routinely dismissed ARP grievances as procedurally improper when parallel [investigator general] investigations were pending" and Attorney General briefs recognizing that practice. There was also contrasting evidence where inmates were told they could not proceed with a grievance while an investigation was pending, but did so anyway and received a ruling on the merits.).

As a result, the court concludes that the evidence does not establish that the grievance process was rendered unavailable to Plaintiff by virtue of the determination that his grievance improperly contained multiple issues and the instruction to file separate grievances.

**4. Ambiguity in AR 740 Concerning how to Proceed with a Grievance Deemed an Abuse of the Prison Grievance Procedure**

Finally, the court will address Plaintiff's contention that his administrative remedies were unavailable because AR 740 is ambiguous concerning how to appeal or otherwise proceed on a grievance that has been deemed an abuse of the inmate grievance process. He argues that this created a situation where this procedure would "trip[ ] up all but the most skillful prisoners."

*Ross* recognizes that administrative remedies are unavailable when an "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" such as when the "rules are 'so confusing that … no reasonable prisoner can use them,'" or when prison officials "devise procedural systems … in order to 'trip[ ] up all but the most skillful prisoners.'" *Ross*, 136 S.Ct. at 1859-60 (quoting *Woodford*, 548 U.S. at 102).

The parties do not dispute that AR 740.09 considers it an abuse of the grievance procedure when an inmate submits a grievance that contains "two or more appropriate issues." (*See* ECF No. 23-8 at 11, AR 740.09.2.F.) The question is, how does an inmate proceed, so as to exhaust administrative remedies for claims that were raised in such a grievance? AR 740.09 provides that when an inmate files such a grievance, the caseworker is to return a copy of the improper grievance to the inmate along with Form DOC-3098 (the improper grievance memorandum), noting the specific violation. (ECF No. 23-8 at 11, AR 740.09.3.A.) The caseworker is also supposed to obtain the inmate's signature and sign it as a witness, give the original to the inmate, and return a copy to the grievance coordinator to include in the inmate's grievance file. (ECF No. 23-8 at 11, AR 740.09.3.B-D.) AR 740.09 goes on to state:

> 4. The inmate shall not be given additional time to re-submit the grievance in the proper form.
>   A. The inmate's failure to re-submit the grievance in the proper form and within the prescribed time frame shall constitute abandonment.
>   B. If the timeframe has been exhausted prior to the inmate receiving Form DOC-3098, the inmate has five (5) days from the date it was received to re-submit.

(ECF No. 24-8 at 11, AR 740.09.4.A-B.)

While AR 740.09 does not *directly* state that an inmate who receives an improper grievance memorandum deeming a grievance an abuse of the prison procedure must timely re-submit the grievance in the proper form in order to proceed with exhausting administrative remedies, AR 740.09.4 implies as much by stating that an inmate who fails to timely re-submit the grievance in the proper form has abandoned it.

Plaintiff points out that elsewhere in the regulation, under AR 740.03.6 (which comes under the heading "GRIEVANCE ISSUE"), inmates are advised that: "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level, within the substantive and procedural requirements outlined herein." (ECF No. 23-8 at 4, AR 740.03.6.) Plaintiff contends that he reasonably understood that to mean that he had to appeal a grievance rejected as abusive to the next levels of review, which he claims he did here. (ECF No. 37 at 20.)

Reading the document as a whole, there is some ambiguity in AR 740 concerning how an inmate is to proceed to exhaust administrative remedies when he receives a response to a grievance that deems the grievance an abuse of the grievance procedure and the inmate disagrees with that determination: does the inmate re-submit the grievance in the proper form under AR 740.09 (here, by submitting two grievances), or does he appeal the improper grievance memorandum to the next levels of review? The court must consider whether this ambiguity rendered the grievance process unavailable to Plaintiff?

The court concludes that it did not. *Ross* reiterated that inmates are "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain some relief for the action complained of.'" *Ross*, 136 S.Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). While there is certainly some ambiguity in AR 740 about how an inmate proceeds to exhaust his administrative remedies when he receives an improper grievance memorandum finding that his grievance constitutes an abuse of the prison grievance process, in this instance Plaintiff was advised in response to the first and second level grievances of the way the prison interpreted the regulation and how Plaintiff was to proceed: by filing two separate grievances on the issue. The prison's interpretation is consistent with the language in AR 740 dealing with grievances found to constitute an abuse of the grievance process which seemingly requires timely re-submission of the grievance in proper form to proceed. Therefore, the grievance process remained available to Plaintiff. Plaintiff ignored this instruction, and instead of re-submitting the grievance as two separate grievances, he filed first and second level grievances appealing the improper grievance determination.

As a result, the court concludes that Plaintiff failed to exhaust available administrative remedies, and Defendants' motion for summary judgment should be granted.

When an inmate plaintiff fails to exhaust administrative remedies, the claims are usually dismissed without prejudice; however, AR 740 allows an inmate six months to file an informal level grievance on an issue involving medical or civil rights claims, and Plaintiff would be well outside the regulations timeframe to grieve the claims asserted here. (ECF No. 34-8 at 6, AR 740.05.4.A.) Therefore, the dismissal should be with prejudice.

The court acknowledges that this is a harsh result for Plaintiff, but it is dictated by the PLRA's mandatory language and case law interpreting what constitutes an "available" administrative remedy. In light of this conclusion, the court need not reach Defendants' arguments concerning the merits of Plaintiff's claims.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' motion (ECF No. 23) and entering judgment in their favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 5, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE